UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KEITH MATHIS,

      Petitioner,

v.                                 Case No. 1:17cv127-TKW-HTC

MARK S. INCH,[1]

      Respondent.

_____/

## ORDER AND REPORT AND RECOMMENDATION

      This matter is before the Court on Petitioner Keith Mathis's first amended petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF Doc. 5. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the first amended petition, the State's response (ECF Doc. 21), the record, and Mathis's reply (ECF Doc. 27), the undersigned recommends the first amended petition be **DENIED** without an evidentiary hearing.

_____

[1] Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d). The clerk is directed to update the case file information to reflect Mark S. Inch is the Respondent.

Mathis seeks habeas relief on the following nine (9) grounds: (1) the trial court violated Mathis's Fourth Amendment rights by denying his motion to suppress evidence obtained during a warrantless search; (2) the trial court violated Mathis's Fifth, Sixth and Fourteenth Amendment rights by allowing a witness to testify that Mathis stated he almost shot the victim; (3) the trial court violated Mathis's Fifth and Fourteenth Amendment rights by allowing the prosecutor to shift the burden of proof and enflame the jury during closing arguments; (4) the trial court violated Mathis's Fifth and Fourteenth Amendment rights by pressuring the jury to continue deliberations past the point of endurance; and (5) four claims of ineffective assistance of trial counsel -- (a) trial counsel failed to advise Mathis he faced a mandatory sentence of life imprisonment when considering a plea offer; (b) trial counsel failed to object to Mathis being called a "convicted felon"; (c) trial counsel failed to object to the trial court's misstatement that "Count I" had been stipulated to rather than "Element 1" of Count II; and (d) trial counsel failed to file a motion for a downward departure from the a life sentence. ECF Doc. 5.

There is no argument by the State that the petition in untimely or that Mathis has failed to exhaust his state remedies.

## I.    Factual Background

Mathis was convicted of the following offenses:

| | |
|---|---|
| <u>Count I</u>: | Possession of a firearm by a violent career felon; |
| <u>Count III</u>: | Trafficking hydrocodone; |
| <u>Count IV</u>: | Drugs -- Possession of a Controlled Substance with Intent to Sell Cocaine; |
| <u>Count V</u>: | Drugs -- Possession of a Controlled Substance with Intent to Sell Methamphetamine; |
| <u>Count VI</u>: | Drugs -- Possession of Cannabis with Intent to Sell; and |
| <u>Count VII</u>: | Possession of Drug Paraphernalia for Use |

ECF Doc. 21 at 2-3.  He is serving a life sentence under Fla. Stat. § 775.084 for Count I.[2]  His other sentences run concurrently with his life sentence.  At issue in this habeas petition is his judgment of conviction and sentence for Count I.[3]

## A. The Crimes

The following summary provides the facts pertinent to the issues raised in the petition.  Around 2:00 am on February 10, 2007, Deputies Michael Rowlands and Cory Hanson were dispatched to respond to a 911 call and arrived at a gas station to find Scott Baty sitting on the curb, bleeding profusely from a head wound.  ECF Doc. 21-2 at 77; ECF Doc. 5 at 5.  Baty told the deputies that, minutes earlier, he and his friend William Freeburn "went to an individual named Sweat's house and

---

[2] Under Fla. Stat. § 775.084, the court must sentence a defendant to a life sentence unless the court finds that such a sentence is not necessary to protect the public.

[3] Mathis was also charged with actual possession of a firearm by a convicted felon (Count II). ECF Doc. 21-1 at 133.  Although Mathis went to trial on Counts I and II, and was convicted on both counts, his conviction on Count II was vacated on direct appeal on the grounds of double jeopardy.  ECF Doc. 21 at 4.

attempted to purchase illegal narcotics, trading videotapes for the narcotics, as opposed to currency. This infuriated Mr. Sweat, and Sweat struck him in the head with a rifle." *Id.* at 77-78; ECF Doc. 5 at 5. Baty described Sweat as a "[b]lack male, middle aged." *Id.* at 79.

After Baty was transported by Alachua County Fire Rescue for medical treatment, the deputies interviewed Freeburn who provided a matching account of the night's events. *Id.* at 79-80. Freeburn took the officers to the residence where the incident had occurred. *Id.* at 81; ECF Doc. 5 at 5. Four or five uniformed officers, led by Rowlands, covertly gathered and parked a street over from the residence. *Id.* They approached the property stealthily because of their concern that an AK-47 was said to be on the premises. *Id.* 80-84, 119.

Anethia Curtis, the legal tenant of the property and the girlfriend of Mathis, observed the officers as they approached the home. She called out to the officers, "who is that." ECF Doc. 5 at 5. While Rowlands was standing about 20 yards from the home and holding his shotgun in a low and ready position (pointed down), he identified himself. ECF Doc. 5 at 5. Deputy Rowlands spoke with Curtis and informed her the officers were there to investigate an alleged aggravated battery, to search for a weapon and to search for someone named "Sweat." *Id.* at 144. Curtis

denied that anything had happened there that night, that a gun was present or that she knew anyone named "Sweat." *Id.* at 87.

Also, as Rowlands approached the house he noticed a black male, later identified as Bennie Hampton, who was working on some construction in the yard, ECF Doc. 21-2 at 88, and that there was a small shed or bungalow in the back yard. *Id.* Rowlands called Hampton over to him and asked him if he knew someone named "Sweat." *Id.* Hampton answered he did not. *Id.* A few moments later, a white male named Brian White exited the shed, which was located fifteen feet from the residence in the backyard. *Id.* at 91. When asked if he knew someone named "Sweat," he said he did not. *Id.* A few moments later, another white male, Dell Bundy, walked out of the shed. Unlike the other two men, he whispered that "Sweat" was inside the shed. *Id.* Rowlands knocked on the side of the shed and called out the name "Sweat." *Id.* at 92. After several seconds of sounds "like things were being moved" from inside the shed, Mathis emerged from the shed and was cuffed. *Id.* at 93, 171. Freeburn identified Mathis as the person who hit Baty with an AK-47. ECF Doc. 21-4 at 131-32, 156-57.

Rowlands then sought to obtain Curtis's permission to search the home. After a thirty to forty-minute discussion, Curtis agreed to allow Rowlands to search the

home so long as Rowlands left his rifle outside and she could accompany them.[4]  *Id.* at 145; ECF 21-1 at 177.  Rowlands and Hanson searched the residence for around ten minutes and, although they observed various pills and drug paraphernalia in plain view, they did not find an AK-47.  *Id.* at 98-99.

Rowland then asked for permission to search the shed.  Whether Curtis gave that consent and whether she did so voluntarily is the crux of Mathis's first ground of relief.  Because the circumstances of the consent are discussed further below in Section II.B., the undersigned does not address them here.  Deputies found an AK-47 in the shed (along with various drugs and paraphernalia).  ECF 21-2 at 111.

## B. The Trial

Mathis went to trial on the two possession of a firearm charges (Count I and Count II).  ECF Doc. 21-3 201-79 & ECF Doc. 21-4 at 1-280 (trial transcript).  During the trial, the State's experts testified that DNA in the blood found on the AK-47 matched that of Baty's and that fingerprints recovered from the gun were inconclusive.  ECF Doc. 21-3 at 261, 273; ECF Do. 21-4 at 13.  In addition to the testimonies of deputies Rowland and Hanson, the State also presented testimony

---

[4] During the evidentiary hearing on the motion to suppress, Curtis admitted she gave Rowland permission to search the home.  ECF Doc. 25-2 at 168-69.

from Baty.  Baty identified Mathis as the person who pointed the AK-47 at him and Freeburn and who hit him with the gun as he was trying to leave the premises on a bike (ECF Doc. 21-4 at 24-26, 50). The State also offered evidence from Bundy, who said that he saw Mathis return to the shed with the gun (ECF Doc. 21-4 at 96-97).

Also, the State called Bryan White as a witness.  White, who initially told officers he did not know anyone by the name of "Sweat" when they arrived at the premises, testified during the trial that (1) Mathis was "Sweat," (2) White went to the property to purchase crack cocaine and smoked it in the shed with Bundy; (3) he heard yelling outside that sounded like Mathis; (4) he saw Mathis looking through a window in the trailer yelling at two men; (5) Mathis pulled out an AK-47 and stuck the barrel out the window; (6) White heard a crack that sounded like Mathis had just "butt stroked the kid in the head with a weapon"; and -- over defense counsel's objection -- (7) that Mathis went into the shed and "said that the kid had disrespected him, and that he had almost shot him."  ECF Doc. 21-4 at 68-75.  This last part of White's testimony is the crux of Mathis's second ground for relief.

In support of the defense's position, the defense presented the testimony of Freeburn, whose testimony differed at trial from what he told deputies the night of the incident. In court, Freeburn wore sunglasses and testified he had a condition on the night in question that severely diminished his eyesight. *Id.* at 151. He claimed he only identified Mathis on the night in question because of the verbal description given him by Baty and his desire to do what Baty appeared to want him to do. *Id.* at 155-56. He claimed not to have seen Mathis himself. *Id.* at 155. He also reported that, a few days after the attack, Baty had approached him and told Freeburn that Freeburn had identified the wrong person. *Id.* at 156. The State brought out on cross-examination that Freeburn had signed a written statement written by Curtis and that Freeburn had never mentioned his poor eyesight before and had not worn glasses on previous trips to the state attorney's office. *Id.* at 176-77. Deputy Hanson was called as a rebuttal witness to refute Freeburn's testimony. *Id.* at 201-03. The final defense witness was Patrick Blake, who testified he was working on a deck in the yard that night and did not see a pair of men at the bathroom window at any point in the night. *Id.* at 189. He admitted on cross, however, that he might not have noticed everything that happened because he was focused on his work. *Id.* at 193.

Mathis attacks the propriety of the State's closing arguments, certain jury instructions and the jury's deliberation in this petition. The details of those events are discussed further below in Section II.D.1-4.

As stated above, the jury found Mathis guilty on Count I and Count II on April 22, 2008. ECF Doc. 21-1 at 148. Mathis then pleaded guilty to the remaining counts, III through VII, ECF Doc. 25-2 at 1, and was sentenced on all the counts on May 15, 2008. ECF Doc. 21-5 at 104.

### C. Post-Judgment Motions and Appeals

Mathis filed a notice of appeal on May 27, 2008. ECF Doc. 21-2 at 9. On January 6, 2011, the First DCA vacated the felon-in-possession conviction in Count II, finding that it constituted double jeopardy in relation to the violent-career-criminal-in-possession conviction in Count I. ECF Doc. 21-7 at 2. The First DCA affirmed the conviction on Count I, however, with a written opinion specifically explaining the reason for affirming the denial of the motion to suppress.[5] *Id.*

Mathis filed a motion for postconviction relief on November 23, 2011. ECF Doc. 21-7 at 67. On October 26, 2015, the state court held an evidentiary hearing

---

[5] The opinion was written by Judge Marstiller, and Judges Webster and Lewis concurred.

on one ground only: whether Mathis' counsel was constitutionally ineffective by failing to advise him that he faced a mandatory life sentence if convicted, causing him to forego a 15-year plea deal.  ECF Doc. 21-9 at 88.  After the evidentiary hearing, the state court denied the motion for postconviction relief in its entirety on November 2, 2015.  ECF Doc. 21-8 at 163.  Mathis appealed that denial on November 13, 2015.  ECF Doc. 21-9 at 78.  The First DCA affirmed, per curiam and without written opinion, on November 1, 2016.[6]  ECF Doc. 21-10 at 18.

## II.    Legal Analysis

### A.    Federal review of state court decision

Under the standard of review for a § 2254 motion, this Court is precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); The United States Supreme Court set forth the framework for a § 2254 review in

---

[6] Judges Makar, Kelsey and Winsor concurred.

*Williams v. Taylor*, 529 U.S. 362 (2000).  *See id.*, at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010).  Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the [] case."  *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring).

### B.    Ground One: The state court's denial of the motion to suppress

Mathis contends the state court violated Mathis's Fourth Amendment rights by denying his motion to suppress evidence obtained during the warrantless search of the shed.  Specifically, Mathis argues Curtis did not voluntarily give officers consent to search the shed.  The Supreme Court has held that a federal court is precluded from conducting post-conviction review of a Fourth Amendment violation

where the petitioner has had an opportunity for full and fair litigation of that claim in the state courts. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also Bradley v. Nagle*, 212 F.3d 559, 564-65 (11th Cir. 2000) ("[S]o long as a defendant has had the opportunity to present his Fourth Amendment claims to the state trial and appellate courts, the objectives of the exclusionary rule have been satisfied."). "'[F]ull and fair consideration' in the context of the Fourth Amendment includes 'at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute.'" *Bradley*, 212 F.3d at 564-65 (quoting *Caver v. Alabama*, 577 F. 2d 1188, 1191 (5th Cir. 1978)); *see also Caver*, 577 F.2d at 1192 ("If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.").[7]

---

[7] The Eleventh Circuit has adopted the decisions of its predecessor court, the Fifth Circuit, decided prior to September 30, 1981, as binding precedent. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Mathis argues in his reply brief that *Stone* is not dispositive and cites *Delisle v. Rivers*, 161 F.3d 370, 380-81 (6th Cir. 2011); ECF Doc. 27 at 2. *Delisle*, however, does not support Mathis's position. First, *Delisle* is not a Fourth Amendment case. Second, the argument in *Delisle* was whether *Stone* should be broadly extended to prevent habeas review on other issues raised in a direct appeal. The Sixth Circuit held that it should not be particularly as to due process challenges to the sufficiency of the evidence or the right to an impartial jury. The issue, therefore, continues to be whether Mathis had a full and fair opportunity to present his Fourth Amendment claim in the state courts, and the undersigned finds that he did.

Mathis filed a motion to suppress, ECF Doc. 21-1 at 156, and was granted an evidentiary hearing. *Id.* at 176.[8] Curtis's testimony at the hearing differed markedly from that of the two deputies. Curtis was asked, "Did you ever give them consent to go into the bungalow?" and answered, "No, ma'am." *Id.* at 171. When she was shown a written consent she had signed which gave consent to search the home and shed, she testified that she never read it, was not wearing her glasses that night, and only signed because the deputies had threatened that she "was going to go to jail for

---

[8] The transcript of the evidentiary hearing on the motion to suppress is found at ECF Doc. 21-2 at 74-212.

a long time because they found wads of rolled up money in aluminum foil in my freezer." *Id.* at 175.

Deputy Rowlands testified, however, that after he searched the home, he asked Curtis for permission to search the "shed." After she corrected him by saying it was a "bungalow" and not a "shed," she then said, "go ahead." *Id.* at 100. Deputy Hanson testified he saw and heard Ms. Curtis say to Rowlands that it "would be okay" for Rowlands to search the shed. *Id.* at 146.

Rowlands then searched the shed and found a transparent pill bottle containing what he recognized as crack cocaine partially hidden in a planter and baggies which appeared to contain powder cocaine. *Id.* at 101-03. He immediately stopped the search and brought the pill bottle out, showing it to Curtis. *Id.* at 104. He then asked her to sign the written consent to search because he perceived the search would need to be more extensive. *Id.* at 104. In contrast to what Curtis had previously testified, Rowlands testified that he read it aloud to her and that she signed it without asking any questions, *id.* at 106, and that he did not make any threats or promises to get her to sign the form. *Id.* at 108-09.

The trial court denied the motion from the bench and also with a written opinion. ECF Doc. 21-1 at 176-79. The state judge explained that "[a]lthough the State introduced into evidence a disputed written consent signed by Ms. Curtis after

the search, the Court does not reach that issue, finding that Ms. Curtis orally gave voluntary authorization prior to the search of the shed." *Id.* at 177. Additionally, the state court found "no evidence to corroborate" Curtis's testimony and, moreover, that her testimony was not credible where (1) she testified she was intimidated by police yet was assertive enough to stand up to Deputy Rowlands and make him leave his rifle while he searched the trailer; (2) she testified she saw 10 to 12 deputies approaching the home whereas every other witness testified that only five deputies were present; (3) she testified nothing happened that night at her property, which was contrary to the testimonies of other witnesses and the evidence presented; (4) she testified the deputies arrived at 11 p.m., but Deputy Rowlands testified he was initially dispatched to the 911 call at approximately 2 a.m., and the sworn arrest mittimus fixed the time of the offense at 1:45 a.m.; (5) she denied giving oral consent to search the shed, but Deputy Hanson and Brian White overheard Curtis orally give Rowlands consent; and (6) she had a strong personal interest in the outcome of the evidentiary hearing, testifying in reference to Mathis, that "I loved him then and I love him now." *Id.* at 177-79. Indeed, on direct examination by defense counsel, Curtis admitted that she knew she could say no to the request for a search. ECF Doc. 21-4 at 169.

The First DCA affirmed, issuing a written opinion specifically on the denial of the motion to suppress, which included the following language:

> Our *de novo* review of the facts and circumstances, *see Cox*, 975 So.2d at 1166, leads us to conclude, as did the trial court, that Curtis was neither forced, nor coerced, nor intimidated into consenting to the search of her trailer and shed. She was awake and saw the four deputies, who were searching for an armed suspect accused of beating a man with an assault rifle, approach her home. She halted their advance before they could enter her fenced yard. The deputies thus remained a distance away from Curtis—indeed, she was inside the trailer—while they sought her consent to search her home. Notably, Curtis negotiated the conditions of the search by insisting that the deputies leave their rifles outside and that she accompany them while they searched. And she testified at the suppression hearing that she knew all the time she could withhold consent. It cannot reasonably be said on these facts that Curtis' "capacity for self-determination [was] critically impaired." Rather, she knowingly, voluntarily, and clearly with a great deal of thought, consented to the warrantless search of her home and shed.

*Mathis v. State*, 53 So. 3d 1089, 1091 (Fla. Dist. Ct. App. 2011)

Thus, Mathis has had "at least one evidentiary hearing in a trial court and the availability of meaningful appellate review." *See Bradley*, 212 F.3d at 564-65. Mathis is therefore not entitled to relief on Ground One. *See id.*; *see also Stone*, 428 U.S. at 494.

## C.    Ground Two: The Admission of White's Testimony

Petitioner argues the state trial court "reversibly erred when it allowed the state to present evidence by Witness White that the Petitioner stated that he almost shot Victim Baty." ECF Doc. 5 at 9. He claims this evidence "created an unfair trial

in violation of the Sixth Amendment to the United States Constitution as well as a violation of due process of law as enunciated in the Fifth and Fourteenth Amendments to the United States Constitution." *Id.* at 10.

This was one of the grounds Petitioner raised in his direct appeal of the judgment. The First DCA did not provide a rationale for denying relief on this ground, stating simply that "Mathis raises four other issues on appeal that present no reversible error by the trial court." *Mathis v. State*, 53 So. 3d 1089, 1090 (Fla. Dist. Ct. App. 2011). Therefore, this Court will "look through" that decision to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning. *See Wilson*, 138 S. Ct. at 1192 (2018). Here, that last decision comes from the trial court itself and is memorialized in the trial transcript. ECF Doc. 21-8 at 105-08.

After opening statements, during a court conference without the jury present, defense counsel objected to the admission of proposed testimony by White that when Mathis entered the bungalow he commented that "he almost shot the guy." ECF Doc. 21-8 at 105 lines 15-25. Counsel argued the testimony's prejudicial value would outweigh any relevancy because the assault charge involving the rifle was not included in the trial. *Id.* The Court overruled the objection and allowed the testimony, reasoning as follows:

> [W]hen I first heard about the statement in the opening, I considered it relevant from what I had heard indirectly during the suppression hearing: And that is that Scott Baty was going to testify that he stood outside that window, and someone pointed a gun at him outside the window. So moments later, for someone else to see Mathis with a gun and said I almost shot that guy corroborates Mr. Baty's testimony, and that's what makes it relevant.
> * * * *
>
> Okay. I understand. This is not an issue of you've already put into evidence 15 gory pictures of the body. A 16th to show that the person was dead loses probative value. I agree with that. This is different. You cannot tell the State, look. You've got one good strong witness. The rest of your evidence of the Defendant's guilt can't come in because it's just highly prejudicial. 90.403 excludes unfairly prejudicial evidence. I would hope that any evidence the State puts on that would support an inference of guilt would be prejudicial. It's unfair prejudice. That's highly relevant because one of the State's eye witnesses, Scott Baty, the victim, says he pointed a gun at me. I've already said it once. I'm repeating myself. But this will end the argument on the issue. Bryan White's testimony that moments later, he saw that individual identified by Scott Baty with a rifle saying, I almost shot that guy corroborates Scott Baty's testimony. The State's case depends on the jury believing him. So corroborative evidence is highly probative. There is prejudice to the statement, but it's not unfairly prejudicial.

*Id.* at 105-08.

A trial court's evidentiary ruling does not provide a basis for federal habeas relief absent a showing that the ruling affected the fundamental fairness of the trial. *See Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998). A petitioner must show the ruling was more than merely erroneous; it must have had "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v.*

*Abrahamson*, 507 U.S. 619, 623 (1993) (applying the harmless error standard for federal habeas review of constitutional error set forth in *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  On federal habeas corpus review regarding a state court's decision to admit or exclude evidence, the court will "determine only 'whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial.'" *Hill v. Sec'y, Florida Dep't of Corr.*, 578 F. App'x 805, 810 (11th Cir. 2014) (unpublished) (quoting *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989)).

Here, the trial court determined the probative value of the evidence at issue outweighed any prejudicial effect.  The statement corroborated Baty's testimony that Mathis was the one who pointed the AK-47 at him and hit him with it, should any doubt have been created by Freeburn's testimony.  The statement was also relevant to showing that Mathis had possession of the gun.  The state court's decision to allow White to testify did not deprive Mathis of a fair trial.

Additionally, the evidence as to Petitioner's guilt was overwhelming.  In other words, contrary to Mathis's assertion that Baty's statement "swung the scales," in favor of guilt, it did not.  ECF Doc. 5 at 10.  Three eyewitnesses, Baty, White and Bundy, testified they saw Petitioner possessing the gun.  Baty had never met and had no connection with White and Bundy, but their stories matched.  Also, the gun was found in the shed that only Petitioner, Bundy and White occupied at the time police

arrived at the property. *See Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993) (finding that constitutional error did not substantially influence jury's verdict in part because "the State's evidence of guilt was, if not overwhelming, certainly weighty."). Therefore, even if the admission of the comment had been error, Mathis cannot show the admission had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623. Thus, Mathis is not entitled to habeas relief on this ground.

### D.  Ground Three: The Prosecutor's Closing Arguments

Petitioner claims the state court committed fundamental error by rejecting his argument on direct appeal that "the prosecutor made comments impermissibly shifting the burden of proof during closing arguments." ECF Doc. 5 at 11. He claims the prosecutor's arguments "created an unfair trial in violation of the Sixth Amendment to the United States Constitution as well as a violation of due process of law as enunciated in the Fifth and Fourteenth Amendments to the United States Constitution." *Id.* at 13.

Defense counsel did not object to the prosecutor's closing argument at trial, and a motion for new trial was summarily denied. Thus, there was no discussion of this issue by the trial court. Also, the First DCA did not issue a written opinion for rejecting this claim on appeal. Therefore, for Petitioner to prevail on this claim, he

must show "there was no reasonable basis for the state court to deny relief" on it. *See Wilson*, 138 S. Ct. at 1195 (explaining that under *Harrington v. Richter*, 562 U.S. 86 (2011), "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief").

"Improper [prosecutorial] argument will only warrant relief if it renders a petitioner's trial or sentencing 'fundamentally unfair.'" *Drake v. Kemp*, 762 F.2d 1449, 1458 (11th Cir. 1985); *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974) (denying claim based on "two remarks made by the prosecutor during the course of his rather lengthy closing argument to the jury" because "we simply do not believe that this incident made respondent's trial so fundamentally unfair as to deny him due process."). In making this inquiry, the Court must determine whether the improper comments "were so egregious as to create a reasonable probability that the outcome was changed because of them." *Brooks v. Kemp*, 762 F.2d 1383, 1400 (11th Cir. 1985), *cert. granted, judgment vacated on other grounds*, 478 U.S. 1016 (1986). A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Wilson v. Kemp*, 777 F.2d 621, 623 (11th Cir. 1985), *cert. denied*, 476 U.S. 1153 (1986). "If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have

been fundamentally unfair." *Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir.1986)

(*en banc*), *cert. denied*, 480 U.S. 911 (1987).

Petitioner challenges two parts of the prosecutor's closing arguments. First,

he challenges the following statements as shifting the burden of proof:

> Conflicts in the evidence. I would suggest to you that if you --when you go back and are deliberating to collectively determine what facts are, if you recognize, identify a conflict in the evidence, just because there's a conflict does not automatically equal reasonable doubt. Your job, your role as jurors, is to resolve the conflicts if you can. And if you can't, if it's a conflict that you can't resolve by looking at the other evidence, using your common sense, using your life experiences, then you have to look at is this conflict so serious, so material, so substantial that it **negates the element** that I'm being asked to consider? Is this conflict so significant that it tells me it negates me believing that he possessed a gun on February 10th? If it is, you find him not guilty. If it isn't, then you do not.

ECF Doc. 21-4 at 235-36 (emphasis added). Petitioner argues that these comments

"had the effect of shifting the burden of proof to the Petitioner and reducing the

burden of proof of the state, by asking the jury to find the Petitioner guilty unless it

found that the evidence was sufficient to significantly 'negate' the evidence offered

by the state witnesses." ECF Doc. 5 at 12.

Second, Petitioner argues the following two statements "impermissibly

enflamed the jury's passions, exhorting the jury to find the Petitioner guilty of

possession of a firearm because it was the only way to impose a deserved 'day of

reckoning' for committing a frightening, horrifying battery upon victim Baty." *Id.*

In the first statement, the prosecutor told the jury that:

> [Baty] looked scared. When he came back in and had the gun, in that brief time, it has to be followed by a day of reckoning. It must be followed by a day of reckoning. You must make him accountable for his actions that day. Hold him responsible for the decisions and the choices he made. Only way you can do that is by finding him guilty of possessing this gun on February 10th, 2007.

ECF Doc. 21-4 at 236-37. In the second statement, the prosecutor told jurors to "Do justice for Scott Baty. Do justice for the state of Florida." *Id.* at 253.

Reviewed in context and against the backdrop of the entire trial, the undersigned finds that the prosecutor's statements do not undermine confidence in the outcome of the trial. "In assessing whether the accused was actually prejudiced by improper argument, we consider the presence of curative instructions and the strength of the government's case." *United States v. Rodriguez*, 765 F.2d 1546, 1560 (11th Cir. 1985). First, after the closing arguments, the trial judge explained the definition of reasonable doubt for the jury and explained that Mathis, as the defendant, was not required to prove anything. *Id.* at 257-59. Also, the trial court instructed the jurors to take their emotion out of the decision. *Id.* at 260-61. Thus, any error caused by any inflammatory remark was cured by the court's cautionary

instructions. *See Rodriguez*, 765 F.2d at 1560; *United States v. Vera*, 701 F.2d 1349, 1361 (11th Cir. 1983).

Also, as discussed above, the evidence of guilt on the only element at issue -- the possession of the firearm -- was overwhelming, and thus, despite the prosecutor's comments, the jury's decision would not have been different. *See Brecht*, 507 U.S. at 639; *Rodriguez*, 765 F.2d at 1560. Therefore, a reasonable basis existed for the state courts to deny the claims in Ground Three, and Petitioner is not entitled to habeas relief.

### E.    Ground Four: The Jury's Continued Deliberations

Mathis's fourth ground for relief involves the jury's deliberations. The jury began its deliberations at 6:17 p.m., and the trial judge called them in at 7 p.m. to ask them if they wanted dinner; the jury said they did not and returned to deliberations. ECF Doc. 21-4 at 264. The jury asked a question at 7:16 p.m. which the court addressed until 7:19 p.m. *Id.* at 267. The jury then deliberated until 9:04 p.m. when the judge called them back to the courtroom. He told them, "I have two choices: And one is that we all just stay down here until you have a verdict, and the other is to take a recess overnight. Everybody goes home and gets a good night's sleep and comes back in the morning." *Id.* at 268. He then asked, "[D]o you feel like you're progressing towards a verdict, so that it makes sense to stay around a

while longer, or would – would a break help?  Would it help to go home and get a good night's sleep and come back? … I've got a trial to conduct in here in the morning, but we've got other jury rooms, and you all can continue to deliberate." *Id.* One juror responded that they might benefit from a break, and another said, "You do?"  The judge then asked if they wanted to go back and discuss the matter of taking a break for the night or continuing.  *Id.* at 269.  The transcript states that the jury responded with "(Chorus of yeses.)"  *Id.*

At 9:09 p.m., the bailiff returned to the court and informed the parties that the jury told him that they had a question but did not want everyone to know about it.  ECF Doc. 21-4 at 269.  The court instructed the bailiff to tell the jury that all questions must be public, which he did.  *Id.* at 270.  At 9:24 p.m., the judge gathered the lawyers and defendant and informed them that the jury sent a note stating, "Here is the issue: Four guilty, actual possession, one guilty, actual or constructive possession, one guilty, constructive possession.  We are willing to discuss further.  However, this is the current dead lock."  *Id.* at 271; ECF Doc 21-1 at 150 (actual note).  The judge noted in open court that the words "dead lock" were underlined twice.  ECF Doc. 21-4 at 271.

The judge consulted with the attorneys and no one objected to the judge reading the standard jury deadlock jury charge. *Id.* at 272. Mathis agreed in his amended petition that the judge then read "the standard jury instruction" -- the so-called *Allen* charge -- to the jury. ECF Doc. 5 at 14; ECF Doc. 21-4 at 273. At 9:45 p.m. the jury returned its verdict. Mathis was found guilty on Count I and Count II on April 22, 2008. ECF Doc. 21-1 at 148. Also, the jury was asked for each count whether Mathis was in "actual" or "constructive" possession of the firearm. The jury selected "actual" possession for each count. *Id.*

Petitioner argues the trial judge coerced the jury to remain and deliberate past the point of fatigue, depriving him of a fair jury trial. ECF Doc. 5 at 14-15. Petitioner's counsel did not object at trial but raised this argument in a motion for new trial, ECF Doc. 21-8 at 200-01, which the trial court summarily denied. *Id.* at 202. Petitioner raised this claim on direct appeal, and the First DCA found that it "present[ed] no reversible error by the trial court." *Mathis v. State*, 53 So. 3d 1089, 1091 (Fla. Dist. Ct. App. 2011). Thus, for Petitioner to prevail on this ground, he must show that "there was no reasonable basis for the state court to deny relief" on it. *See Wilson*, 138 S. Ct. at 1195.

As with the above claims, Petitioner must show the ruling was more than merely erroneous; it must have had "'substantial and injurious effect or influence in

determining the jury's verdict.'" *Brecht*, 507 U.S. at 623. Petitioner's claims do not meet this standard. "The Supreme Court held long ago that a trial court may instruct a deadlocked jury to keep deliberating," even in capital cases. *United States v. Davis*, 779 F.3d 1305, 1312 (11th Cir. 2015) (citing *Jones v. United States*, 527 U.S. 373, 382 n.5 (1999) ("We have ... approved of the use of a supplemental charge to encourage a jury reporting itself as deadlocked to engage in further deliberations, even capital sentencing juries." (citation omitted)). "It is not only permissible but proper for a trial judge to ask a jury to continue deliberating if it appears that further deliberation might be fruitful in helping the jury reach a unanimous verdict." *Coleman v. Quarterman*, 456 F.3d 537, 548 (5th Cir. 2006).

Petitioner first argues the trial court erred in determining the jury was deadlocked. The Petitioner's claim is not supported by the trial record. The judge described the jury's note as follows: "Four guilty, actual possession, one guilty, actual or constructive possession, one guilty, constructive possession. We are willing to discuss further. However, this is the current **dead lock**, underlined twice." ECF Doc. 21-4 at 270-71 (emphasis added). The court concluded the jurors were in a "three-way deadlock. But I believe that if they indicate that they are deadlocked, as this does – the proper response is the jury deadlock." *Id.* at 271. The court then read the standard *Allen* charge. The trial court was not unreasonable in finding a

jury deadlocked where the jury itself used the word "deadlock" and underlined it twice.

Additionally, although "[a]n *Allen* charge itself may be inherently coercive based on "the language of the charge and the totality of the circumstances," it was not here.  *See United States v. Douglas*, 572 F. App'x 876, 877 (11th Cir. 2014). The trial court here read the standard *Allen* charge and did not modify it.  No "partial or one-sided comments were engrafted" upon the charge given.  *See id.* (finding that an *Allen* charge which was nearly identical to the approved Eleventh Circuit pattern instruction was not inherently coercive).  The court did not suggest to the jury that they would be required to reach a verdict after their requested break, that they must rush to a decision, or that any jurors should abandon their positions.  Also, although the hour was late when the charge was given, the trial court had previously instructed the jury that the jury had two choices: "that we all stay down here until you have a verdict, and the other is to take a recess overnight.  Everybody goes home and gets a good night's sleep and comes back in the morning." *Id.* at 268.  The judge then allowed the jury to consider the question.  *Id.* at 269.  Rather than give a direct answer, they sent the question to the judge revealing their deadlock.  *Id.*  Thus, the trial judge was anything but coercive.  He explained to the jury their options and indicated a level of flexibility in allowing them to decide how to proceed.  Finally,

the total time the jury deliberated was three hours and thirty minutes. Thus, because there is a reasonable basis for denying relief on this claim, Mathis is not entitled to habeas relief. *Wilson*, 138 S. Ct. at 1195.

### F. Four Claims of Ineffective Assistance of Trial Counsel

Ground Five consists of four claims of ineffective assistance of trial counsel. Mathis received an evidentiary hearing on the first claim of ineffective assistance, ECF Doc. 21-9 at 88-129, and the state court issued a written order denying these claims, in addition to several others. ECF Doc. 21-8 at 163-75.

The First DCA affirmed the denial of the postconviction motion *per curiam* without a written opinion. ECF Doc. 21-10 at 18. Because the First District issued a *per curiam* affirmance of the denial of Mathis's Rule 3.850 Motion, this Court will "look through" that decision to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning. *See Wilson*, 138 S. Ct. at 1192. Here, that last decision comes from the Final Order Denying Motion for Post-Conviction Relief. Doc. 21-8 at 163.

### 1. Trial Counsel Was Ineffective for Failing to Advise Mathis He Faced Life Imprisonment

Mathis alleges trial counsel was ineffective for failing to advise Mathis he would be exposed to a life sentence if he rejected the State's plea offer. According

to Mathis, his counsel told him in June 2007 the State was offering to settle the offenses charged in the instant case, as well those charged in case number 01-2007-CF-000661-A, in exchange for a negotiated sentence of 15 years imprisonment in the Department of Corrections.  Mathis contends counsel also told him he had a "pretty good" chance of being acquitted if he went to trial.  However, according to Mathis, there were no additional discussions regarding the plea offer, and counsel never advised Mathis that he was facing life imprisonment if he proceeded to trial and lost.  ECF Doc. 5 at 16-17,

There are two governing legal principles that are pertinent to Mathis's claim. The first legal principle comes from *Strickland v. Washington*, 466 U.S. 668 (1984), where the Court set forth the following two-prong test for determining whether counsel's performance is constitutionally ineffective: Mathis must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.  *See id.* at 687.  The second governing legal principle comes from *Lafler v. Cooper*, 566 U.S. 156 (2012), and *Missouri v. Frye*, 566 U.S. 134 (2012), cases in which the Supreme Court addressed ineffective assistance of counsel claims in the context of plea negotiations.  In *Lafler*, the Supreme Court held that counsel was ineffective for advising his client of an incorrect legal rule, which led to the client rejecting the plea that had been offered.  *Lafler*, 566 U.S. at 1380.

In *Frye*, the Supreme Court found that counsel's failure to convey a letter to his client from the prosecutor offering two possible plea bargains and, instead, letting them lapse was ineffective under *Strickland*.  *Frye*, 566 U.S. at 137.  Also, in *Frye,* the Supreme Court held that for a defendant to establish the prejudice prong under *Strickland*, "defendants must demonstrate a reasonable probability that they would have accepted the more favorable plea offer had they been afforded effective assistance of counsel and that the plea would have been entered without the prosecution's canceling it or the trial court's refusing to accept it."  *Frye*, 566 U.S. at 137; *see also Lafler*, 566 U.S. at 1380.

Mathis and his trial counsel, Ileana Haedo, testified at the evidentiary hearing. Haedo testified that although she does not have a specific recollection of a date and time during which she discussed the plea offer with Mathis, it is her practice[9] to sit down with her client and educate the client regarding the client's options.  ECF Doc. 21-8 at 167.  This includes printing out the applicable statutes, enhancements, and jury instructions and providing them to her client at the jail.  *Id.*  Haedo recalled having conversations with Mathis regarding the charges, the evidence against him,

---

[9] Haedo testified she has been practicing as a trial attorney and appellate attorney for 22 years.

the enhancements, and the sentence he would have been facing if he was convicted, although she does not specifically recall advising him he would be facing a mandatory life sentence if convicted. *Id.* According to Haedo, she has no doubt in her mind she advised Mathis and he knew he was facing life imprisonment if convicted at trial. *Id.* She further indicated that Mathis wanted her to take depositions and continue to prepare for trial because he believed the evidence in this case was the result of an unlawful search and seizure by law enforcement. *Id.*

Haedo also testified there was no discussion of the plea offer on the record, but confirmed that in at least three court appearances, where Mathis was present, either the State or the Court referenced the mandatory life sentence. At the case management conference in June 2007, the State told the court "Mr. Mathis is looking at life in prison right now." At the pretrial conference in January 2008, the State put on the record that "the possession of a firearm by a violent career criminal [charge] carries a mandatory life sentence." A similar statement was made at the Pretrial Conference Hearing in February 2008, and then again at the pre-jury selection meeting. *Id.* at 168.

Mathis, nonetheless, denied any prior knowledge that he was facing a possible life sentence, mandatory or otherwise. *Id.* When confronted with the transcripts of the prior court appearances where a mandatory life sentence was discussed, Mathis

stated he had a lot of things on his mind and was not paying attention. Mathis emphasized that had he known that he was facing a mandatory life sentence, he would not have proceeded to trial, but instead accepted the State's plea offer of 15 years. *Id.*

In its written opinion denying Mathis's Rule 3.850 motion, the state court judge found Mathis's testimony to not be credible, particularly regarding Mathis's lack of awareness of the possible mandatory life sentence. The state judge also discounted the rest of Mathis's testimony and gave specific and reasonable explanations for doing so:

> At the outset, this Court finds *none* of Defendant's testimony to be credible. First, Defendant denies under oath facts which are undisputed and clearly reflected in the record. Defendant's refusal to admit the irrefutable renders his testimony wholly incredible. Second, Defendant claims that he would have accepted the 15-year plea offer had he known that he was facing a potential life sentence if he lost at trial. Yet, Defendant was warned of this possibility prior to trial, as the record reflects. It is not credible for Defendant to say otherwise. Finally, Defendant testified at the hearing that, consistent with Ms. Haedo's testimony, he wanted to take this case to trial so that he could fight the charges, of which he contends he is innocent.

*Id.* at 168-69. The state judge also explained the court's reasons for crediting trial counsel's testimony:

> This Court finds Ms. Haedo's testimony to be credible as to the fact that Defendant was advised of the potential mandatory life sentence. Though she did not recall any specific conversations, given her

> recollection of meeting with Defendant on over ten occasions and
> discussing the charges and enhancements, as well as the fact that
> mandatory life sentence is mentioned on the record at least three times
> prior to trial, her testimony that she would have advised Defendant of
> this possibility prior to trial is credible.

*Id.* at 169.

Thus, based on the hearing testimony, the evidence presented, the legal argument of the parties, and the record, the state court found that Mathis had failed to prove either error by counsel or prejudice.

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir.2011). "Federal habeas courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Id.* (quotation marks omitted). The deference compelled by 28 U.S.C. § 2254(d) "requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations." *Turner v. Crosby*, 339 F.3d 1247, 1273 (11th Cir. 2003) (quotation omitted). Instead, "[i]n the absence of clear and convincing evidence, we have no power on federal habeas review to revisit the state court's credibility determinations." *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1259 (11th Cir. 2013).

Here, the Petitioner has not presented any reason to overturn the state court's credibility determinations, much less clear and convincing evidence. Thus, this Court defers to the state court's finding that Mathis "failed to prove either error by counsel or prejudice." ECF Doc. 21-8 at 69; *see Nejad v. Attorney Gen., State of Ga.*, 830 F.3d 1280, 1289 (11th Cir. 2016) (a district court should not "second guess a state court's credibility determination based on speculation").

Mathis also argues Haedo's silence at the hearing on Mathis's 3.800 motion after Mathis expressed to the court that neither he nor his counsel was aware a life sentence was a possibility "reinforc[es]" his claim. ECF Doc. 5 at 17. The undersigned disagrees. The state court made it clear at that hearing that the only issue before the court was whether the court knew it had the authority to make a downward departure from a life sentence. In fact, the court advised Mathis that he could raise the plea issue through a post-judgment motion and that until he brings such a motion, "it's pointless for us to discuss it." ECF Doc. 21-5 at 158. Thus, there was no reason for Haedo to address Mathis's statement at that hearing and her silence does not mean she agreed with Mathis.

### 2. Trial Counsel Was Ineffective for Failing to Object to Mathis Being Referred to as a Convicted Felon Before the Jury

As to his second claim of ineffective assistance of counsel, Mathis alleges trial counsel was ineffective for failing to object to Mathis being referred to as a "convicted felon" in the presence of the jury, in the jury instructions and in the verdict form. ECF Doc. 5 at 18. Petitioner claims this "poisoned the minds of the jury and deprived him of his right to a fair trial and impartial jury." *Id.* The state court determined, however, that because Mathis was proceeding to trial only on weapon offenses, which pertained to his legal status, counsel did not err by failing to object to the use of that term at trial: Petitioner being a felon was required under both counts. Also, the parties stipulated to the Petitioner's legal status, and so the details of his prior felonies did not come into evidence. *See United States v. Miller*, 255 F.3d 1282, 1289 (11th Cir. 2001). Petitioner, therefore, was not prejudiced by counsel declining to bring an objection that likely would have been denied. An attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted). The state court's decision rejecting this claim was therefore not contrary to, nor an unreasonable application of, federal constitutional law, and is supported by a reasonable basis.

### 3. Trial Counsel Was Ineffective for Failing to Object to the Court's Misstatement that the Parties Had Stipulated to Count I Rather Than Element 1 of Count II

In his third ineffective assistance of counsel claim, Mathis alleges trial counsel was ineffective for: (a) failing to object to the trial court's advisement to the jury that Count I had been stipulated to and did not need to be considered by the jury, and (b) failing to move for a curative instruction or clarification. ECF Doc. 5 at 19.

The trial judge made the following misstatement during the jury instructions: "Again, Count I has been stipulated to, so you need to be concerned only with Count II." In denying this issue in the 3.850 motion, the state court considered the circumstances and found it unlikely the jury heard that statement as meaning Mathis was conceding his guilt as to Count I. Specifically, the state court noted the trial court had previously told the jury the instruction correctly at the beginning of the trial as well as during the description of Count I, when the judge stated: "As I told you at the beginning of the trial, that first element, that the Defendant meets the statutory criteria, has been stipulated to, so it's only the element regarding possession that you are to consider." ECF Doc. 21-4 at 254. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence." 28 U.S.C. § 2254(e)(1). Here, Mathis has not provided clear and convincing evidence that the state court's finding is incorrect.

### 4.    Trial Counsel Was Ineffective for Failing to Request a Downward Departure at Sentencing

Mathis alleges trial counsel was ineffective for failing to file a motion for a downward departure and for failing to present any evidence at Mathis's sentencing supporting a downward departure.  ECF Doc. 5 at 20.

During the sentencing hearing, the prosecutor told the court "with respect to Count I, I believe based upon the jury verdict the Court must sentence the defendant to a mandatory life sentence.  That's what the State would be asking for."  ECF Doc. 21-5 at 104.   The court responded, "Well, that leaves me no discretion as I understand the law." *Id.*  The judge then ruled, "So as I'm required to do with an adjudication of guilt on Count I in 668, [I] sentence you to life in prison with credit for 461 days." *Id.* at 105.  Defense counsel did not object or argue for a downward departure or exception from the mandatory life sentence.

Based on the Court's statements, above, Mathis filed a motion to correct sentencing error under Florida Rule of Criminal Procedure 3.800(b)(2), arguing the trial judge incorrectly thought he had no discretion to impose anything other than a life sentence for Count I, the conviction for possession of a firearm by a violent

career criminal.  ECF Doc. 21-5 at 96-97.  The 2007 version of Florida Statute § 775.084(3)(c)(5) specifically allows the Court to impose a lesser sentence if the court "finds that such sentence is not necessary for the protection of the public."  ECF Doc. 21-5 at 97.

The trial judge held a hearing on the motion on August 26, 2009.  ECF Doc. 21-8 at 118.  At the hearing, the judge explained that the court knew that the imposition of a life sentence was not mandatory and that the court had the authority to issue a lesser sentence, but the court did not do so because no evidence was presented from which the court could make a finding that "such a sentence is not necessary."  Thus, under those circumstances, the trial judge explained, the court did not have authority to impose a lesser sentence.  *Id.* at 121-23.  Also, during the hearing, trial counsel acknowledged she did not move for a downward departure, explaining, "I did not believe that one was viable for him based upon the extensive history that Mr. – and I don't have his file in front of me to go over it.  But that was one reason, coupled with the facts contained within his trial I thought were of significance to raise concern as to risk to the community."  *Id.* at 128.

In its order denying 3.850 relief on this ground, the state court determined that defense counsel was not ineffective because an attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without

merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted). Also, the state court found no prejudice because any such mitigation evidence, even had it been presented, would have been "substantially outweighed by Defendant's criminal history, as reflected in his status as a violent career criminal and as reflected by his prior convictions on the scoresheet, it is unlikely that the court would have determined a life sentence was not necessary for the protection of the public." *Id.* at 173. Indeed, "prior to the instant sentence, Defendant has been sentenced to the Department of Corrections seven (7) times." *Id.* at n. 6. The state court's denial of relief is not contrary to, or an unreasonable application of clearly established federal constitutional law.

### D.    Evidentiary hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Here, the state court granted a hearing on Ground I as well as the fourth ineffective assistance of counsel claim. Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See*

*id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.      The clerk shall change the docket to reflect that Mark S. Inch has been substituted as the respondent.

And, it is respectfully RECOMMENDED:

1.      That Mathis's first amended petition under 28 U.S.C. § 2254 (ECF Doc. 5) be DENIED, without an evidentiary hearing;

2.      That a certificate of appealability be DENIED; and

3.      That the clerk close this matter.

At Pensacola, Florida, this 17th day of September, 2019.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.